## THE NEW DAWN.

District Court, D. Maine, S. D. January 4, 1930.
No. 1161.

Israel Bernstein, Edward J. Harrigan, and Nathan W. Thompson, all of Portland, Me., for libelant.

F. R. Dyer and Jacob H. Berman, both of Portland, Me., for claimant.

PETERS, District Judge. This is a libel against a vessel whereby a seaman seeks to recover damages for injuries sustained by him on the occasion of a fire in the forecastle where he was sleeping.

The New Dawn is an auxiliary schooner of about 20 tons, engaged in the business of ground fishing out of Portland. She was operated by a master and a crew of 12 fishermen on the ordinary fishing lay. On the day in question the vessel sailed from the harbor about 9 o'clock in the evening. Part of the crew went to the cabin to sleep, and the rest, including the libelant, into the forecastle. There were, in the forecastle, besides the bunks where the men slept, the galley stove and a pump near the stove with a pail under the pump at least partly filled with water.

Around midnight one of the men was aroused by smoke in the forecastle. He aroused his mates who hurried to the companionway to get on deck. The men were frightened, and their sudden and simultaneous rush jammed the exit, but they soon got out, all but the libelant and the man Williams who aroused him and who appears to have been the only cool person present. The libelant, De Coste, was hard to arouse, and Williams had some difficulty in getting him out of his bunk and on deck. There was some evidence that he had been drinking before coming on board that evening, but apparently not to a great extent, as one witness testifies that he (De Coste) was "pretty sober." However, he understood the situation when finally awakened and made a dash for the exit. By this time the woodwork back of the stove had begun to blaze and De Coste, moving clumsily, had been caught by the flames and burned somewhat. Williams, who was behind him and helped him up the companionway, was unhurt. All hands were called and with the aid of a fire hose from a lightship the fire was subsequently put out.

The libelant claims that the marine tort here—which must be shown in order to recover in this action in rem—consists in a failure of the vessel's owners to provide suitable fire extinguishers for use in the forecastle in such an emergency. He claims that the New Dawn was unseaworthy—not in the location or nature of the stove—but in the lack of proper fire-extinguishing apparatus, and particularly that there was no extinguisher in the forecastle, in a convenient place, ready for use.

The libelant invokes and claims to have brought himself within the rule laid down in the authoritative case of The Osceola, 189 U. S. 158, 23 S. Ct. 483, 487, 47 L. Ed. 760: "That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship."

Assuming, without deciding, that a fire extinguisher in the forecastle is one of the proper appliances appurtenant to the ship which the owner must supply and keep in order, two questions arise: (1) Was a fire extinguisher there? (2) If not, was its absence the proximate cause of the accident?

Much testimony and argument has been adduced on the point of the presence of a fire extinguisher on a rack near the companionway of the forecastle. It is impossible to find from a careful analysis of the conflicting and somewhat unsatisfactory oral testimony that there was any fire extinguisher in the forecastle ready for use at the time of the fire. There was one in the engine room and an old one of no usefulness kicking about under foot right after the fire, and testimony that some months previously an extinguisher had been noticed in the forecastle, but no definite evidence of the presence of one there immediately before the time of the fire, and consequently I answer the first question in the negative.

Was the lack of a fire extinguisher the cause of the libelant's injuries? He was injured by the flames of a fire which originated in woodwork back of and near the stove. Whether the stove or its connecting appliances were defective, or whether improper use caused the woodwork in the vicinity to catch afire, does not appear. There is no testimony whatever on those points. It is apparent that there was negligence connected with the origin of the fire, but that negligence the libelant does not charge against the vessel. The presence or absence of a fire extinguisher had nothing to do with the origin of the fire which burned the libelant. In order to bring the extinguisher into the picture it must appear that it would have had some usefulness in preventing the injuries to the libelant after the fire started; but all the testimony is to the effect that nobody attempted or desired or thought of doing anything to put out the fire till they got on deck. The men were being blinded and suffocated by smoke.

Fire can be extinguished by water as well and sometimes better than by a patent so-called fire gun, especially in the hands of inexperienced men. Here was a pail with water in it under a pump within two or three steps of the fire. If there had been any time or thought of putting out fire before the men got out, some one would have used the pail. As a matter of fact neither the pail nor the extinguisher was thought of, nor was either a factor in the situation. Had the forecastle been lined with fire extinguisher the men would have rushed past them to the deck for air. The fire started when the men were asleep. They had to run for their lives. The presence or absence of either water or fire gun in no way caused or contributed to the libelant's injuries.

The presence of a fire extinguisher could not possibly have changed the situation for the better considering the conditions that existed and the mental attitude of the men at the time. The statement of one of the men as to what he might have done if he had had an extinguisher at the time is of no importance in the light of the fact that he made no attempt to do so at the time and does not testify that he even thought at the time of putting out the fire with either water or other means.

The second question must also be answered in the negative.

While I have held that the vessel here is not liable because of unseaworthiness, it does not follow that the seaman, libelant, may not recover for his maintenance and cure under the ancient principles of admiralty law. He is entitled to that, in any event. The Osceola, supra.

It is claimed by counsel for the claimant here that the libelant cannot recover for his maintenance and cure because he does not specifically ask for that in his libel; but he does ask for "such other and further relief in the premises as in law and justice he may be entitled to receive." This is a sufficient demand under which he may be awarded maintenance and cure. The Teviotdale (D. C.) 168 F. 481, and cases cited. If the parties desire, evidence may be taken on this branch of the case or it may be referred to a commissioner, if not otherwise adjusted.

There is no evidence of damages before the court.

Decrees may be entered accordingly.