WINFIELD v. WINFIELD.

(In Banc.  May 10, 1948.  Suggestion of Error Overruled June 14, 1948.)

[35 So. (2d) 443.  No. 36743.]

**Holmes & Bowdre** and **Gerald Chatham,** all of Hernando, for appellant.

Sam **F. Cole** and **J. E. Madden,** both of Memphis, Tenn., for appellee.

Argued orally by **Gerald Chatham**, for appellant, and by **Sam F. Cole**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellant filed a bill for divorce against appellee, his wife, charging habitually cruel and inhuman treatment, later amended so as to charge adultery. Appellee, the wife, answered and filed a cross bill, charging her husband with cruel and inhuman treatment. Both demanded the custody of the three children. Upon the hearing a decree of divorce was granted without stating the ground or grounds therefor; the custody of the two older children was given to the husband; alimony in a lump sum was awarded to the wife, as well as the custody of the youngest child, and she was given the sole and exclusive right to the occupancy of the former marital home. The husband appeals. The assignment of errors does not challenge the divorce, but goes to the alimony and to the other features of the decree so far as adverse to the husband. There is no cross-appeal.

It is a familiar principle of appellate procedure that where it does not affirmatively appear on what ground the decision of the lower court was made, the duty of the appellate court is to sustain the judgment or decree if there was any ground disclosed by the record upon which the decision could properly have been reached. It follows as a corollary that if the evidence sustains the decree or judgment on only one ground the action of the trial court

will be ascribed to that ground, and not to some other not so sustained. As stated by this Court in Hulett v. Hulett, 152 Miss. 476, at page 508, 119 So. 581 at page 590: ''When the chancellor does not make a specific finding of facts, then the court must look to the evidence, and see what state of facts, if any, will justify the decree.'' Compare Carr v. Miller, 162 Miss. 760, 139 So. 851.

The evidence in the present case is not sufficient to support a decree of divorce on the ground of cruel and inhuman treatment as charged either by the husband or by the wife, but the decree is amply sustained under the charge of adultery made by the husband in his amended bill.

When a divorce has been properly granted because of the adultery of the wife, she is not entitled either to alimony or to the custody of the children, save temporarily as to an infant so young as not to permit separation from its mother, and save as to some exceptional circumstances, none of which are here present. This rule, long recognized in this State, was expressly reaffirmed in Hulett v. Hulett, supra, and we need not pause to elaborate upon it. If the decree in this case awarding the custody of the youngest child to the mother might have been justified because of its age, that reason has ceased to exist the child now having arrived at the age of six years.

The decree awarding alimony in money to the wife, except as to the orders of temporary alimony pendente lite, is wholly reversed and vacated, and a decree will be entered here awarding the custody of the three children to their father, nothing of a competent nature appearing in this record to the contrary of his fitness and suitability; and it is not shown that he was in any way substantially to blame as respects the delinquency of the wife.

We leave open the further question whether the former wife shall be granted the privilege of visitation to the children, and, if so, when and under what conditions and with what precautions. We think that issue should be remanded to the chancellor, who will be able to see

not only what happened before the appeal but what has happened or may happen since.

It appears that the home place occupied by the parties at the time of their separation was owned by the husband and wife as tenants in common, each owning in title a half interest therein. As stated, the decree of the trial court was that the wife should have a right to the sole use and occupancy of the property. Inasmuch as we are entering a decree here awarding the custody of each and all the three children to the father and former husband, we also reverse the decree as to the property and now order and direct that the property shall be made free to a partition proceeding, the equities to be worked out therein to the same effect as if the parties had never been husband and wife, save that the wife shall not be charged for the use of appellant's half interest for any period of occupancy by her with the youngest child up to the time of the filing of the mandate in this case in the court below.

Any other issues that may arise, not covered expressly or by necessary implication in what has been said in this opinion, are, of course, to be determined by the chancellor on the remand.

Reversed, decree here, and cause remanded.

### DISSENTING OPINION

McGehee, J., delivered a dissenting opinion.

The majority opinion herein correctly summarizes the state of the pleadings, and the disposition made of this case in the trial court; but after a careful study of the entire record before us I am unable to concur in the view that we should make a finding of fact here for the first time that the wife was guilty of adultery, and that therefore the decree awarding her the sum of $2,000 as a lump sum of alimony should be set aside on that ground, and also that the custody of the youngest

child which was awarded to the mother, on account of its tender age should be taken from her by this Court and awarded to its father on the sole ground of the mother's alleged adultery, where the trial judge not only failed to adjudicate her guilt thereof, but declined to do so after hearing all of the conflicting testimony of the numerous witnesses in open court in regard thereto.

I do not dissent from the view that if the evidence before the trial court sustains its decree on only one ground, the action of such court will be ascribed to that ground, and not to some other charge not so sustained. But I am unable to concur in the view of the majority opinion however that the action of the trial judge in the instant case in granting a divorce without specifying the particular ground on which the same was being granted renders it either necessary or expedient that we ascribe his action in granting the divorce to the ground of the alleged adultery.

There was an abundance of proof on behalf of the wife, and it is undisputed, that prior to the filing of her cross-bill she had been assaulted, struck in the face by her husband with his hand or fist after he had removed her glasses from her eyes for that purpose, and that he threw her to the ground and held her there for nearly an hour awaiting the arrival of an officer of the law in an effort to keep her out of the home which they owned as tenants in common; that he had engaged the services of a relative as a "bouncer" to keep her out of the house in his absence in the event she came there to see her children, and that this man wrongfully, and with force and violence, prevented her from gaining admission to the inside of the residence, allowing her to see the children only through the screened door; and that the husband was otherwise guilty of habitually cruel and inhuman treatment of his wife in keeping the whereabouts of her children unknown to her prior to the filing of her cross-bill for divorce on that ground until he reappeared

with them at the trial, after an absence of nearly seven months in all, and during which time he was keeping the children at Jonestown, and in Madison County, Mississippi, and in the State of Florida. It was further shown that during this time he caused her to be tortured by false messages that the children were in Mexico, or at Mt. Pleasant, Texas, etc., and all of which treatment afforded the trial judge ample ground to grant the divorce on the ground of the husband's habitually cruel and inhuman treatment of the wife, unless it can be said by this Court on an original finding of fact here that his mistreatment of her was caused and made excusable by the wife's adultery.

To hold that the husband's treatment of the wife was either caused or made excusable on the ground above mentioned is to beg the question. Moreover, every witness who resided in the community and county where this family had lived for several years came and testified that at the time of the trial she enjoyed the confidence and respect of every person in the community as an ideal mother and a faithful wife, notwithstanding the testimony of the witnesses out of Memphis to the contrary —witnesses engaged by the husband not for the purpose of ascertaining that his suspicions might have been unfounded, but rather to get information on which to base a charge on which he could drive her from their home and obtain a divorce, as he had done from his former wife.

If the husband had been as much interested in the welfare of their two little girls and boy, and in maintaining the marital status for the preservation of the home, as he should have been, it is indeed passing strange that he is not shown to have made known to her prior to the occasion in question that he entertained such suspicion as to the rectitude of her conduct in regard to the man in question, or that at any time he never remonstrated with her in regard thereto, prior to the occasion complained of.

The wife frankly conceded that she was very indiscreet in going first to a tourist court restaurant during the evening testified about, where she was drinking a Coca Cola when she met up with the man who regularly serviced the family car at a filling station, and who entered this eating place after she had arrived there; and she testified that he thereupon introducd her to his friend, Mr. Miller, and the latter's "future", and that she accepted their invitation to go to what she understood, when she left the restaurant, was the home of Mr. Miller, where these three other persons said they were all going to have a drink; and she admits that it turned out that they entered a tourist cabin to which she had carried the remainder of her bottle of Coca Cola to drink instead of joining them in drinking something more potent. It was then that the light brigade of "snoopers" out of Memphis, including a sister of the husband and her daughter, both of whom had also been divorced from their husbands, and including some of his other relatives and friends, who had followed her at his instance, soon gathered about the cabin and called her out, and whereupon, she came out and accompanied them to her home where the occurrence was discussed by the husband and wife in the presence of his said witnesses. She testified at the trial that she had been guilty of no immoral conduct on the occasion in question, or at any other time, and that these three other persons were in the cabin while she was there.

On the other hand, these relatives and friends of the husband testified, with one exception, that they did not look inside of the cabin so as to be able to say whether there were other persons in there or not, but one of them testified that he later looked in the cabin from the outside and did not see anyone else in there, after the filling station operator came out and talked to him and another member of the group. They all further testified, however, to varying details as to what she was doing as she came out of the cabin, some of them saying that she had her

shoes in one hand and her purse under that arm while she held her glasses in the other hand, and was adjusting her clothes; but it seems that one of these witnesses was able to appreciate the fact that this would have been a difficult undertaking for only two hands, and he said that she was adjusting and pulling up her clothes with her elbow, a still more fantastic version as to what she was doing. None of the witnesses claim to have seen her engaged in an illicit relation with the man in question, or to have seen her at all in the cabin, but only as she came out.

They testified that after they all arrived at her home from the tourist camp where the husband had remained, there was a full and complete confession by the wife in their presence as to all of the details as to what had occurred between her and the man in question, even as to their being undressed, and otherwise involving her guilt of the charge made against her, notwithstanding that none of them were claiming to have seen her while she was inside the cabin, or that they had ever at any time known of her being engaged in any immoral conduct. The trial judge therefore had the right, in view of her previous and subsequent good reputation, to decline to find her guilty of an act of adultery, and especially in view of the fantastic details given by these witnesses, and the apparent unreasonableness of their contention, along with that of her husband, that she made such a free and voluntary disclosure of the details of her alleged guilt in the presence of his sister, and other relatives and friends, at a time when none of them had claimed to have any knowledge in the premises except as to what they claimed to have observed when she came out of the cabin, dressed, but adjusting her clothes.

Moreover, there is no proof in the record before us from any witness that she had ever theretofore been guilty of any immorality, and the proof at the trial was undisputed that she had led a most exemplary life from the time of the occasion in question until the trial

was had during the following year. This was for the consideration of the chancellor in determining her guilt on the occasion in question. Then, too, a great number of the good women of the community where they had resided for nearly all of the preceding twelve years, and who would have ordinarily been the first to condemn any woman for such alleged misconduct, came before the trial judge and freely testified as to the respect, esteem and confidence in which she was still held in the community where she had been active in the Church, Sunday School, Parent-Teachers Association, and other causes, stating frankly to the judge that they would not believe her guilty of any immoral conduct unless they should observe such wrongdoing on her part with their own eyes. The chancellor's opinion which appears in the record clearly discloses that he thought at the conclusion of the testimony that this couple should continue living together, but he then made the observation that he could not compel them to do so, and then announced that the bonds of matrimony would be dissolved, but failed to state in what ground this would be allowed.

Thus, it will be seen that even though we, without having observed the demeanor of the witnesses on the stand, may think that the preponderance of the evidence would strongly tend to establish this serious charge against the wife, it may nevertheless be true that we are not justified in finding here that the chancellor was manifestly wrong in not granting the divorce on the ground of adultery, or that on the other hand, he did not grant the same on the ground of the husband's cruel and inhuman treatment of the wife prior to the filing of her cross-bill.

In the case of Hulett v. Hulett, 152 Miss. 476, 119 So. 581, where there was much stronger and more cogent proof of the wife's adultery than in the case at bar, the Court, on the appeal here, did not sustain the divorce on the ground of adultery, but reversed the case for further proof on the allegation, because the trial court

had erroneously excluded additional evidence offered by the husband to sustain such charge. It was reversed for that issue to be determined by the trial court on further proof in order that it could then be decided whether or not the allowance of alimony for the wife, and the awarding of the custody of the child to her, should be allowed to stand, since the wife would not be entitled either to alimony or the custody of the child if she were ultimately found to be guilty of adultery.

In the Hulett case, supra, the decree was affirmed only insofar as it granted a divorce, and it was affirmed as to the divorce only for the reason that, as stated in the opinion, "The bill alleges both cruelty and adultery as grounds for divorce, and the chancellor found as a fact that the proof was insufficient to show adultery, but was sufficient to show cruelty; . . .". The decree of the trial court did not state whose allegation of cruelty was sustained by the proof, and the Court here ascribed it to the proof offered by the husband on that charge, since that was the only proof on which the Court here thought the decree could be upheld on that ground.

However, in the case at bar, the proof, in my opinion, is ample to sustain the decree of the chancellor on the ground of the husband's habitually cruel and inhuman treatment of the wife prior to the filing of her cross-bill, and we are also advised in the briefs of counsel for the husband that he expressly declined to adjudicate the wife to be guilty of adultery and to thereby place a stigma upon her and the three innocent children here involved. And, that is not all. The chancellor, who was the late and lamented Vernon Rowe, a seasoned lawyer and experienced judge, is presumed to have known that he was without authority to award alimony to the wife, and the custody of one of the children to her, if he had been convinced by a preponderance of the evidence that she was guilty of adultery. Since he made such awards, his action in that behalf is in itself sufficient

to justify the belief that he granted the divorce under the other charge in the pleadings, to-wit: the charge of cruel and inhuman treatment on the part of the husband, since there was no proof whatever of any habitually cruel and inhuman treatment of the husband by the wife. She is not shown to have been guilty of any wrong-doing whatever, other than the alleged misconduct or indiscretion on the one occasion complained of, there being no suggestion in this record that she had committed a single act of adultery either prior or subsequent to the occasion complained of, and there is ample proof that she had made an ideal mother for her children; that she kept them neat and clean, well cared for in every way, and properly trained; and that the best interest of the child awarded her would be served by her having its custody.

She remained in the home after her husband left it with the children, and it was ordered by the chancellor that she retain possession thereof pending its proposed sale for partition. Since she was already in possession and is a tenant in common of the home place, I think that this Court is without authority or precedent to exercise original jurisdiction in ejectment by disturbing the chancellor's decree in that regard by a mandate in that behalf.

Nor do I think that original jurisdiction is vested in this Court to determine whether or not a change of not much more than a year in the age of the youngest child, and in the circumstances would justify that a change in its custody should be ordered. That prerogative is vested in the trial court by Section 2743, Code of 1942, which provides, among other things, that "the court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require." In other words, unless the decree appealed from was erroneous when rendered it should not be reversed, and the mother is entitled to be heard before the trier of facts as to whether or not at this time it is still to the best interest of this little

girl to be under her care and custody, and especially is this true in view of the exemplary life now being led by its mother, according to the undisputed proof in this record.

I am therefore of the opinion that the decree appealed from should be affirmed in all respects, since the husband is amply able to pay the alimony allowed to the wife, and she is entitled to remain in the home until it is sold for partition, and which she helped to construct with her own hands, and in which she owns an undivided interest as a tenant in common of the farm on which it is located. At any rate, I do not think that either the trial court or the court here has authority to require a tenant in common to vacate the common property pending a partition thereof, except where the use thereof is awarded to a wife as a part of the alimony to which she may be entitled, and especially where the other tenant moved away to hide out the children from the co-owner.

**Roberds, J.,** concurs in this dissent.