**WEST v. EASTERN TRANSP. CO. Inc.**

No. 6018.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 13, 1950.

Decided Jan. 31, 1950.

Louis B. Fine, Norfolk, Va., for appellant.

C. Dodson Morrisette, Norfolk, Va., for appellee.

Before PARKER and DOBIE, Circuit Judges, and WARLICK, District Judge.

DOBIE, Circuit Judge.

Plaintiff, administrator of the estate of John Jacob Gifford, deceased, instituted this civil action in the United States District Court for the Eastern District of Virginia, under the Jones Act, 46 U.S. C.A. § 688, against defendant, Eastern Transportation Company, to recover damages for the death of Gifford. Defendant filed an answer to the complaint, and,

on the conclusion of the plaintiff's evidence, the defendant moved to dismiss the complaint on the ground that the evidence did not show any actionable negligence contributing to the death of Gifford, on the part of defendant. The District Court sustained the motion to dismiss, and Plaintiff has appealed to us.

■ Under the Jones Act, two requirements must be satisfied in order to maintain an action. (1) There must have been a negligent act on the part of defendant; (2) The act must have contributed to the injury. The Matagalpa, D.C., 9 F.Supp. 416. See, also, De Zon v. American President Lines, Ltd., 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065, rehearing denied 319 U.S. 780, 63 S.Ct. 1025, 87 L.Ed. 1725; Pittsburgh S. S. Co. v. Palo, 6 Cir., 64 F.2d 198.

■ On the motion to dismiss, we consider the evidence in the light most favorable to the plaintiff. But, even viewing the record here before us in such a manner, we find that the requirements for a recovery imposed by the Jones Act have not been satisfied.

Plaintiff's decedent, Gifford, was employed by defendant as cook on the barge, Luther E. Hooper. Gifford either fell or jumped from the barge; his body was found three days after he was missed. There is nothing whatever in the record to show the actual circumstances surrounding his death.

Plaintiff apparently seeks to predicate negligence on the part of defendant upon three grounds: (1) defendant was negligent in hiring Gifford when Gifford was in an intoxicated condition; (2) defendant was negligent in maintaining a rail so low as not to furnish protection to Gifford, who it is alleged, was in a drunken condition; (3) defendant's servant was negligent in failing to restrain Gifford from committing suicide, after Gifford had indicated such an intention.

There is no evidence whatever that Gifford was drunk when he was hired or when he fell or leaped from the barge. In fact, the evidence is to the contrary. Gifford was on the barge for more than five hours prior to his death and during that time was not observed to imbibe any alcoholic beverage. Beyond the fact that he had been drinking prior to the time he was hired (early in the morning of the same day) and was "nasty and dirty," looked "like an alcoholic" and "like he had just gotten off a drunk" when he boarded the barge, there is no evidence that Gifford was intoxicated. Gifford performed the feat of boarding a launch and climbing from the launch to the barge without assistance; then he helped to crank a gasoline engine, cooked a meal, ate lunch, washed the dishes and tidied up the galley. His physical coordination could thus hardly have been seriously impaired.

But even if we assume that Gifford was somewhat intoxicated, there is no evidence that this fact contributed to his demise. The barge was anchored in the calm waters of Norfolk harbor, a very short distance from the Lambert's Point Coal Piers. And even if the barge rail was in bad repair or too low (as we must assume in spite of conflicting evidence), we have no way of determining whether or not Gifford actually fell over the rail. The record contains not a scintilla of any causal connection between the condition of the rail and Gifford's going overboard.

Plaintiff's last allegation of negligence must also fail. Fisher, a donkeyman employed by defendant and the only other person on the barge with Gifford, testified that Gifford said that he was going to jump overboard and that he hoped it would not be "a disgrace on his sister." Fisher replied: "Oh, you are crazy. Go aft and lay down. You haven't got a thing in the world to do. Tomorrow you will feel better." Fisher then talked to Gifford from five minutes to half an hour, while Gifford smoked a cigarette. Then Fisher went below and left Gifford smoking a cigarette. Half an hour later, Fisher came on deck and discovered that Gifford was missing. Certainly, Fisher had no cause to believe that Gifford had any immediate intention of taking his own life; for in Fisher's own words "He was similing and there didn't seem to be anything the matter with the man." Even if it had been obvious to

Fisher that Gifford was bent on suicide, it is uncertain what effective steps Fisher, the only other person on board the barge, should, or could have taken. Any attempt at actual physical restraint of Gifford by Fisher might have resulted in injury to Fisher. And Fisher, although titularly left in control of the barge, was only a member of the barge's crew, and it is open to doubt whether he actually had any authority to exercise control over Gifford.

For the reasons set out in this opinion, the judgment of the District Court must be affirmed.

Affirmed.