Larry *v.* Moody

No. 41995 November 6, 1961 134 So. 2d 462

*Simmerman, Richardson & Faggard,* Pascagoula, for appellant.

*Deutsch, Kerrigan & Stiles,* New Orleans, La.; *Merle F. Palmer,* Pascagoula, for appellee.

RODGERS, J.

The appellant John E. Larry filed suit in the Circuit Court of Jackson County, Mississippi, against appellee Maude Katherine Moody for the recovery of damages for personal injury growing out of the sinking and loss of the fishing vessel Bessie Lee. The defendant answered the suit, and a trial was had before a jury, resulting

in a directed verdict and judgment in favor of appellee. The appellant made a motion for a new trial and from an order overruling his motion, he appealed to this Court.

On October 4, 1959, appellee was the owner of the Bessie Lee, a 22 gross ton wooden hull, 44 foot, 165 horsepower diesel propelled fishing vessel. Appellant operated the Bessie Lee for appellee under a plan for sharing the proceeds of the catch, which is sometimes called a ''fishing lay'' or a ''half line plan.'' The Bessie Lee was licensed by the Bureau of Customs for a vessel under twenty tons.

On October 4, 1959, appellant docked the Bessie Lee at Gulfport and sold a catch of shrimp. One of the crewman did not return and appellant employed another man by the name of ''Buck'' (sur-name was not known), and thus proceeded to sea at 10 P. M. Appellant attempted to catch fish out on the east side of Chandeleur Island in seven fathoms of water, but finding no fish, he proceeded down the eastward side of that island to a locality called ''14 Fathom Water.'' It was later determined to be seventeen miles northeast of Stake Island in the Gulf of Mexico. Fish were discovered and a buoy was put into the water. The wheel was turned over to Buck, the helper, and while appellant was occupied in putting nets over the side of the boat, the boat suddenly ''struck something submerged'', ''solidly'' and the shock caused the boat to ''tremble all over.'' The appellant put the motor out of gear, and this automatically started the bilge pump. He jumped down into the boat, but found that it was ''knee deep'' in water. He then came out on deck and started an auxiliary motor in an effort to pump the water out of the boat, but the combined efforts of the two pumps were of no avail, and the boat heeled to port and settled down by the stern. Appellant told his crewman to jump and both men jumped into the water. The boat sank within a few minutes after

the collision or impact. There was not sufficient time intervening between the impact and the time the boat "heeled to port", for the appellant to don a life jacket which was nearby, or sufficient time available to send a message for help on his "ship-to-shore" radio. After the boat sank, appellant seized a 25-gallon butane bottle and floated for thirty-six hours in the water, during which time he was seriously attacked and stung by sea nettles (Portuguese Men of War). He finally reached Chandeleur Island and was rescued by passing fishermen. The crewman "Buck" has not been seen since and his body has never been recovered. Appellant suffered serious and painful injuries from exposure, and it is alleged that he is permanently injured.

The declaration filed by appellant in the Circuit Court of Jackson County, Mississippi, is based upon the Jones Act (U. S. Code Anno., Title 46, Sec. 688, p. 23), and it alleges that "* * * the relationship of master and servant existed between him and the defendant, and it then and there became and was the duty of the defendant to furnish the plaintiff a reasonable safe vessel in which to work, to exercise reasonable care and diligence, to furnish the plaintiff with safe tools and implements, and above all a *seaworthy* vessel in which to navigate * * * the defendant did willfully, recklessly and with gross *negligence* violate and breach the duties owing the plaintiff * * *" (Emphasis supplied.) It is apparent from the above-quoted parts of the declaration that the action is founded upon negligence and unseaworthiness of the vessel Bessie Lee.

When appellee and appellant rested their case in the trial court, the Circuit Judge sustained a motion made by the defendant requesting a verdict in her favor. Appellant complains on appeal that the jury should not have been directed to find for appellee because, (1) whether or not the vessel was seaworthy was a question to be determined by the jury; (2) the trial judge erred

in not following the rules of admiralty under the "Jones Act", U. S. Code Anno., Title 46, Sec. 688, p. 23; and (3) that the plaintiff was a seaman and received his injuries while in the course of his employment, as is contemplated by the Jones Act.

 █ Appellant challenged the action of the Circuit Judge in granting the peremptory instruction in favor of defendant on the ground that "The trial judge erred in not following the rules of admiralty under the Jones Act." It is therefore necessary to examine the law so as to understand why this case was filed in the State Courts, and what is meant by "the rules of admiralty," before we can determine whether or not the State court followed the rules of admiralty. Actions for injuries to seamen in coastal waters may be instituted in the common-law state courts or the U. S. District Courts. It was pointed out in 1 Am. Jur., Admiralty, Sec. 18, p. 556, as follows: "The Constitution, in granting to the United States judicial power over admiralty and maritime causes, did not deprive the state courts of jurisdiction over the same subject-matter when exercised under other forms of procedure. * * * But the common-law courts always offer a remedy in personam, and the right to pursue this course of redress is saved to every litigant by the provision of the Judiciary Act. Of such suits the admiralty and common-law courts have concurrent jurisdiction." See also the following authorities: Parisot v. John Helm, 52 Miss. 617; J. H. Burton & Sons Company v. May (Ala. 1925), 103 So. 46; 2 C. J. S., Admiralty, Sec. 62, p. 121; 59 A. L. R. 504 Anno.; Engel v. Davenport, 271 U. S. 33, 46 S. Ct. 410, 70 L. Ed. 813; Sidney v. Lykes Bros. S. S. Co., Inc., et al., 8 So. 2d 550 (La. 1942).

Appellant based his cause of action on the Jones Act, supra, and also on the old rules of maritime law requiring the owner to furnish seamen with a seaworthy vessel, including tools and gear.

We now turn to authorities to determine requirements as to procedure in both instances. First: When an action is brought in the State Courts of common-law jurisdiction, based upon a maritime tort, the state courts will administer the admiralty law. 1 Am. Jur., Admiralty, Sec. 19, p. 558.

Second: In order to maintain a suit under the Jones Act, it must be shown (a) that the libelant or plaintiff was a seaman, (b) that the defendant or respondent was the seaman's employer; (c) that there must have been negligent action on the part of the employer; and (d) the action must have contributed to the injury of a seaman. West v. Eastern Transportation Co., 179 F. 2d 478; Gelb v. United States, 75 F. Supp. 833; Mercer v. N. Y. Trap Rock Corporation, 91 F. Supp. 434.

It has been said that negligence is the gravamen, the essence or substance, of a suit under the Jones Act. See De Zon v. American President Lines, Ltd., 129 F. 2d 404, 318 U. S. 660; Sundberg v. Washington Fish & Oyster Co., 138 F. 2d 801; American Pacific Whaling Company v. Kristensen, 93 F. 2d 17; Kunschman v. United States, 54 F. 2d 987.

Third: A seaman may also recover from an employer for injuries due to unseaworthiness of a vessel at the commencement of a voyage. This rule is clearly stated by the textwriter Norris in The Law of Seamen, Vol. 2, Sec. 619, p. 256, as follows: "The essence of a suit under the Jones Act is the negligence of the employer or of his shipmaster, officers, agents and employees. However, the right of a seaman to indemnity for injuries due to the unseaworthiness of the vessel at the commencement of the voyage is not dependent upon the negligence of the owner or of his knowledge of that condition. The duty is absolute and its breach without regard to negligence makes the owner liable

for damages resulting from the injury, when proximately caused by the unseaworthy condition.''

██ █ Since the decision in 1902 of the Osceola case, 189 U. S. 158, 47 L. Ed. 760, it has been the settled rule that a vessel and her owners are liable to indemnify a seaman whose injury was caused by unseaworthiness of a vessel or its appurtenant appliances and equipment. See The Falco, 20 F. 2d 362; The SeeandBee, 102 F. 2d 577. It is a nondelegable duty to furnish a seaworthy vessel, with equipment in a safe condition, at the beginning of a voyage. Globe S. S. Company v. Moss, 245 F. 54; Corrado v. Pedersen, 249 F. 165; Henson v. Fidelity & Columbia Trust Co., 68 F. 2d 144; Ives v. United States, 58 F. 2d 201.

The right to sue an employer for an injury based on unseaworthiness of a vessel is not based on negligence of the owner, as pointed out above, but the owner owes the seaman a contractual duty to supply him at the commencement of the voyage with a vessel and appliances which are seaworthy in all respects and safe for him to use. The H. A. Scandrett, 87 F. 2d 708; Balado v. Lykes Bros. S. S. Co., Inc., 179 F. 2d 943; Sabine Towing Co., Inc. v. Brennan, 72 F. 2d 490.

██ █ It is now well-settled that under the law of admiralty, the two causes of action of a seaman, that is to say, the right to sue for negligence, and the right to sue for failure to furnish a seaworthy vessel and equipment, may be brought in one action. This is pointed out in Norris, The Law of Seamen, Vol. 2, Sec. 665, pp. 337-338, as follows:

''A seaman injured in the service of the vessel by reason of her unsafe condition due to the owner's negligence has three rights of action; (a) the right under the general maritime law, to recover maintenance and cure and wages to which he is entitled irrespective of negligence or fault unless the injury was brought about by his own willful misbehaviour; (b) the right, under

the general maritime law, to recover indemnity for injury caused by the unseaworthiness of the vessel; and (c) the right, under the Jones Act, to recover indemnity for a personal injury suffered in the course of his employment and due to the negligence of the shipowner.

"As to the maintenance and cure, the seaman's right is separate from or independent of his right to indemnity or compensatory damages for an injury by negligence. The two rights are consistent and cumulative and he had both rights, i. e., the right to sue for maintenance and cure and the right to sue for compensatory damages. Neither right is an alternative remedy to the other.

"The language of the Jones Act specifically gives to the seaman 'at his election' the choice of maintaining an action at law with a right of trial by jury. The selection of this right permits him to a trial by jury in a common law forum in a State court.

"The weight of authority today is that a seaman can seek a remedy for negligence under the Jones Act and for unseaworthiness under the general maritime law in the same suit without being required to 'elect' upon which theory he is proceeding. The election required by the Jones Act is merely one between a trial by jury and a suit in admiralty."

■■ ■ Appellant insists that "The fact that neither the bilge pump nor the friction pump were working to capacity; the fact that the interior of the vessel had not been inspected; the fact that there was a caulking loose upon the vessel; the fact that the propeller had been recently damaged; and the fact that the vessel Bessie Lee itself had been sunk previous to this occasion, were all in the opinion of the undersigned questions of fact for the jury."

The evidence introduced in the record in this case overwhelmingly refutes the claim that the vessel itself was not seaworthy. It was shown by the claimant himself that the vessel was in good condition, and although

the propeller or propeller guard was bent or broken, it had been repaired before the fatal voyage. The boat had been caulked and painted, and a new friction pump installed on the deck. This fact was shown by the testimony of appellant. He was asked ''How long before this trip out into the Gulf did you have the pumps worked on?'' and answered ''We changed pumps on that trip, and had the pump mounted on deck, you know, stationary on deck.''

Assuming that the water pumps did not pump to full capacity, no proof was offered to show that properly functioning pumps of any size could have saved the boat. Many statements of appellant indicate that the boat went down in a very short time, from two to five minutes, such a short time that it was impossible to procure a life jacket or give a warning over the radio. The failure of the pumps to function could not have been the cause of the sinking of the Bessie Lee, nor the fact that they were not pumping to full capacity have contributed to the injury and suffering of appellant.

The evidence is insufficient to show that a wheel came off and caused a hole in the boat, and the testimony is insufficient to show that failure of the pumps contributed to the sinking of the Bessie Lee, and later injury of appellant.

■ ■ The burden of proof was upon appellant to show by a preponderance of the evidence in the trial court that Maude Katherine Moody, the owner of the Bessie Lee, was either negligent under the new rules of the Jones act, or that she furnished an unseaworthy vessel, appliances or gear, under the old rules of the general maritime law. Gelb v. United States, supra; Engel v. Davenport, 271 U. S. 33, 70 L. Ed. 813; Cruse v. Sabine Transportation Co., Inc., 88 F. 2d 298; Rey v. Colonial Naval Co., 116 F. 2d 580; Pittsburgh S. S. Company v. Palo, 64 F. 2d 198; Page v. United States, 177 F. 2d 601.

Norris, The Law of Seamen, in Vol. 2, Sec. 681, p. 256, points out: "It is not enough that a seaman is injured on an unseaworthy vessel, for the shipowner under the general maritime law is responsible and liable only for injuries proximately caused by the unseaworthy condition. An injury must be in consequence of the unseaworthiness; it must be connected with and result from it." Citing The New Dawn, 36 F. 2d 970 (DC Me 1930); Mahnich v. Southern Steamship Co., 321 U. S. 96, 88 L. Ed. 561, 64 S. Ct. 455 (1944).

██ ██ We do not believe from a careful reading of the evidence in this case that appellant's testimony made a case against appellee under the new rules of the Jones Act or under the old rules of the general maritime law as to the seaworthiness of the Bessie Lee. "A mere scintilla of evidence is not enough to require the submission of an issue to the jury. * * *'' was quoted from the case of Deere v. Southern Pac. Co., 9 Cir., 123 F. 2d 438, in the opinion of De Zon v. American President Lines, 129 F. 2d 404, and the case of Slocum v. New York Life Insurance Co., 228 U. S. 364, 369, 33 S. Ct. 523, 525, 57 L. Ed. 879 (Ann. Cas. 1914D, 1029), was cited.

██ ██ We are therefore of the opinion, and so hold, that the circuit judge was correct in directing a verdict for defendant, although he announced that recovery would be limited to recovery under the Jones Act. This Court has uniformly held that a correct judgment of trial courts will be affirmed, although our decision is based on different grounds and legal theory than that on which it was decided by the trial court. See Lee v. Memphis Pub. Co., 14 So. 2d 351, 195 Miss. 264, 152 A. L. R. 1428; Winfield v. Winfield, 203 Miss. 391, 35 So. 2d 443. The order and judgment of the lower court is therefore affirmed.

Affirmed.

*Lee, P. J., Arrington, McElroy* and *Jones, JJ.,* concur.