Herbert **CASSELMANN**
v.
**TUG CAPTAIN KELLY**
No. 3507.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 28, 1963.

CHRISTENBERRY, Chief Judge.

This is an action *in rem* against the Tug CAPTAIN KELLY by Herbert Casselmann, former crewmember aboard the Tug CAPTAIN KELLY, for an injury' allegedly received while working aboard that vessel in the Intercoastal Waterway near Lake Charles, Louisiana, on March 30, 1957. The matter having been tried to the Court without a jury, the Court having heard evidence and the arguments of proctors, and having taken time to consider the matters, hereby makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### I.

Libellant, Herbert Casselmann, was serving as a combination deckhand and cook aboard the Tug CAPTAIN KELLY on March 30, 1957. He was 44 years old and weighed 240 pounds. His salary was $275.00 per month.

### II.

On March 30, 1957, the Tug CAPTAIN KELLY was owned by and operated by claimant, Devall Marine Service, Inc. Subsequent to the filing of the libel herein, the Tug CAPTAIN KELLY was sold to parties not involved in this litigation.

### III.

The Tug CAPTAIN KELLY is a wooden hull vessel whose registered dimensions are 40.3 feet in length, 16.1 feet in breadth, and 4.6 feet in depth.

### IV.

At approximately 4:10 P.M. on the afternoon of March 30, 1957, the Tug CAPTAIN KELLY got underway from the Devall Marine Service, Inc., dock near Lake Charles, Louisiana, and departed for the Calcasieu Locks to meet the Tug SINCLAIR ST. LOUIS in order to take in tow two light barges, Barge SINCLAIR 16 and Barge SINCLAIR 17.

The Barge SINCLAIR 16 and the Barge SINCLAIR 17 were steel tank

William L. Von Hoene and James B. Kemp, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for libellant.

Harold J. Lamy, Dodd, Hirsch, Barker & Meunier, New Orleans, La., for respondent.

barges of the approximate dimensions of 250 feet in length, 40 or 50 feet in breadth, and 11 feet in depth. As both barges were light, they were only drawing about 1 foot of water; about 10 feet of each barge was out of the water.

Shortly after 9:00 P.M. on March 30, 1957, the Barges SINCLAIR 16 and SINCLAIR 17 were received by the Tug CAPTAIN KELLY, and pushed into the north bank of the Intercoastal Waterway approximately one mile west of the Calcasieu Locks. This was done so that the barges could be rearranged, which were then in tandem formation.

Serving aboard the Tug CAPTAIN KELLY as her crew at this time, besides, libellant, Herbert Casselmann, were H. S. Lafleur, master, and C. J. Richard, deckhand.

The Tug CAPTAIN KELLY was hipped up on the port side stern of the Barge SINCLAIR 17. The Barge SINCLAIR 16 was then made up directly ahead of the Tug CAPTAIN KELLY and was also hipped to the port side of the Barge SINCLAIR 17. Libellant Casselmann and deckhand Richard then boarded the Barge SINCLAIR 16 by stepping from the bow of the Tug CAPTAIN KELLY to the deck of the Barge SINCLAIR 16. They made fast certain lines from the Barge SINCLAIR 17 to the Tug CAPTAIN KELLY. One line was run from the stern of the Tug CAPTAIN KELLY to the stern cavel of Barge SINCLAIR 17. A second line was also made fast running from the starboard bitt of the Tug CAPTAIN KELLY to the afterquarter cavel of the Barge SINCLAIR 17. The third line ran from the capstan of the Tug CAPTAIN KELLY to the midship's cavel of the Barge SINCLAIR 17.

During the course of this makeup, libellant Casselmann went back aboard the Tug CAPTAIN KELLY to secure the lines mentioned. To do this, he stepped across the three foot space from the deck of the Barge SINCLAIR 17 to the second, or upper, deck of the Tug CAPTAIN KELLY. This upper deck was about 6½ to 7 feet from the bottom deck. There was an iron hand railing about 2 feet off the upper deck. This railing was practically even with the deck of the Barge SINCLAIR 17. Casselmann stepped across this space safely and without event. He admitted that it was easily done.

Continuing with the makeup, Casselmann then went back to the deck of the Barge SINCLAIR 17. To do this, he stepped back across the 3 feet space separating the upper deck of the Tug CAPTAIN KELLY to the deck of the Barge SINCLAIR 17, again safely and without event.

Upon completion of the makeup, the Tug CAPTAIN KELLY was manuevered in an effort to free the barges, which were still nosed in against the north bank. While doing so, Captain Lafleur noted that some slack was developing in the bow line, apparently because the line was slipping from the midship bitt of the Barge SINCLAIR 17. Captain Lafleur called out to libellant Casselmann and advised him that slack was developing in the line. Casselmann, who was still aboard the Barge SINCLAIR 17, then decided to board the Tug CAPTAIN KELLY in an effort to take up the slack in this line. At the same time, the Tug CAPTAIN KELLY was swinging away from the Barge SINCLAIR 17, and the distance between the two vessels was increasing. Casselmann did not wait for Captain Lafleur to swing the Tug CAPTAIN KELLY back against the Barge SINCLAIR 17, which would have allowed him to step from the Barge SINCLAIR 17 to the upper deck of the Tug CAPTAIN KELLY. Instead, Casselmann took it upon himself to jump out four to six feet over open water and down five or six feet to the deck of the Tug CAPTAIN KELLY, which was still swinging away from the Barge SINCLAIR 17. He landed on his left leg, causing the injury complained of herein.

Casselmann continued working until the next day, when he was examined by the first of several doctors, all of whom

agree that Casselmann has some degree of residual disability in his lower leg. However, Casselmann returned to work on October 19, 1957, and is now earning more than he was earning at the time of his injury.

## V.

Although Casselmann maintained that he was instructed to jump from the Barge SINCLAIR 17 to the deck of the Tug CAPTAIN KELLY, no danger was apparent, and he could have easily awaited the Tug CAPTAIN KELLY to be swung back into position.

## VI.

■ The Tug CAPTAIN KELLY was not unseaworthy because a ladder was not on board. The absence of the ladder was unimportant because had Casselmann waited for the vessel to be swung back into position, he could have stepped across from the Barge SINCLAIR 17 to the upper deck of the Tug CAPTAIN KELLY and he would not have been injured. Libellant's own expert, Thomas D. Doyle, testified that if there was a ladder on board, and if the two vessels had come alongside each other, he would have stepped across from the deck of the Barge SINCLAIR 17 to the upper deck of the Tug CAPTAIN KELLY in the same manner used by Casselmann on the two occasions before he jumped. Besides, with the two vessels swinging apart, a ladder could not have been used until the vessels were brought alongside each other, and then the ladder would not be needed, because Casselmann could have crossed from the Barge SINCLAIR 17 to the upper deck of the Tug CAPTAIN KELLY. Thus, the absence of the ladder played no part in his injury.

## VII.

■ The Tug CAPTAIN KELLY was not unseaworthy because she had a three man crew instead of a four man crew. Respondent's expert, Clifford C. Northern, Jr., clearly testified that vessels of this type normally operate with a two or three man crew, and in any event, the lack of a fourth crewmember did not cause or contribute to Casselmann's injury.

## VIII.

■ The sole proximate cause of Casselmann's injury was his own gross negligence in jumping from the deck of the Barge SINCLAIR 17 to the deck of the Tug CAPTAIN KELLY.

## CONCLUSIONS OF LAW

### I.

The Court has jurisdiction of this action and venue is properly laid in the Eastern District of Louisiana, 28 U.S.C. 1333.

### II.

Libellant Casselmann has not established that the Tug CAPTAIN KELLY was unseaworthy. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); Selby v. United States, 264 F.2d 632, 1959 A.M.C. 909 (2d Cir., 1959), cert. denied, 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 62 (1959); The New Dawn, 36 F.2d 970, 1930 A.M.C. 278 (S.D.Me.1930).

### III.

The sole proximate cause of Casselmann's injury was his own gross negligence. Jackson v. Pittsburgh S. S. Co., 131 F.2d 668, 1943 A.M.C. 885 (6th Cir., 1942); Clinton v. Joshua Hendy Corp., 264 F.2d 329 (9th Cir., 1959).

### IV.

Respondent, Devall Marine Service, Inc., is entitled to a decree in its favor and against libellant, Herbert Casselmann, dismissing libellant's libel, at libellant's costs.