616 So.2d 888 (1993)
Gladys GATES
v.
Neville GATES, Sr.
No. 91-CA-0516.
Supreme Court of Mississippi.
March 11, 1993.
*889 Earl B. Stegall, Gulfport, for appellant.
George E. Estes, Jr., Estes & Estes, Gulfport, for appellee.
Before HAWKINS, C.J., and PITTMAN and ROBERTS, JJ.
HAWKINS, Chief Justice, for the Court:
Gladys Gates has appealed from the judgment of the chancery court of the First Judicial District of Harrison County that she was not entitled to a portion of the rent from a commercial building owned by her and her former husband, and housing the dry cleaning business which had been previously owned by her former husband. Neville Gates, Sr., the ex-husband, has cross-appealed the court's ruling that a partition petition could not be heard in this action. We reverse and remand for a partition by public sale, and adjustment of the equities between the parties consistent with this opinion.

FACTS
Neville and Gladys married January 27, 1944, separated in 1970 on the same date, and were divorced April 5, 1972. One son was born of their marriage, Neville, Jr., called "Ned."
During their marriage they purchased a residence and also commercial property upon which Neville operated a dry cleaning business, "Gates Cleaners." This business was his sole source of income. The funds for purchase of this realty came from Neville's earnings.
In the divorce decree Gladys was awarded $200 per month alimony, the use and possession of the house upon which Neville was to pay taxes and insurance, and reasonable utility bills. She was also given possession of an automobile upon which he was to pay license fees, liability insurance and reasonable repairs and gasoline charges. The divorce decree was silent as to the commercial property upon which the dry cleaning business was located.
Ned, seventeen years at the time of divorce, continued to live with Gladys, but worked for his father in the dry cleaning business. Following the divorce Neville married Janice Gates.
In the late 1970's Neville incorporated his business as Gates Cleaners, Inc., authorizing issuance of 150 shares at par value of $100 per share. He sold his business in exchange for all corporate shares, but did not sell the commercial realty to the corporation. The corporation initially paid him a monthly rental of $500 on the realty, later increased to $700 per month. From 1977 through 1991 Neville received a total sum of $91,900 in rent.
Neville wanted to transfer the business to Ned, and with the advice of his attorney and accountant, on January 1, 1988, the following agreement was reached: The corporation redeemed Neville's shares for $125.000 of which $75,000 was paid in cash, and the balance evidenced by a promissory note payable in 120 equal monthly installments of $583.77 each. At the same time Ned purchased ten corporate shares in his *890 own name. Ned then guaranteed the purchase price indebtedness, pledging his corporate shares as security.
On October 31, 1989, when Neville got $690 in arrears on his alimony payment, Gladys filed a complaint citing him for contempt, asking for an increase in alimony, and also claiming she was entitled to one-half of the rent he received each month on the commercial property.
Neville answered, paying the arrearage in alimony, and by cross-complaint sought to terminate the alimony obligation. Additionally, he prayed for an adjudication of their respective interest in the commercial realty, and that the court would partite it.
Following a hearing, by March 11, 1991, judgment, the chancellor increased Gladys' alimony to $300 per month, declined to order Neville to pay any of the rent he had received and to partite in this action.
In his opinion the chancellor gave as his reason for declining to order Neville to pay Gladys a portion of the rent was that the "property is that upon which Gates Cleaners, the income provider for both the Complainant and Defendant, is located and that Mr. Gates was impliedly if not explicitly granted the right to continue to operate the cleaning business by the prior decree of divorce."
The chancellor held that either party was entitled to have the commercial property partited but it should be done in a separate action.
Gladys has appealed from the judgment denying her any portion of the rent from the building, and Neville has cross-appealed, claiming the chancellor should have ordered a partition.

LAW

I. DIRECT APPEAL  PORTION OF RENT
The chancellor was correct in his holding that the commercial building housed Gates Cleaners, "the income provider for both the Complainant and Defendant." Nor was he manifestly wrong in his holding that Gates was "impliedly if not explicitly granted the right to continue to operate the cleaning business by the prior decree of divorce." The chancellor gave no reason for his further holding that Gladys was not entitled to a portion of the rent, and the express holding of the chancellor, in and of itself, was insufficient to deny her a portion of the rent. On appeal, however, all reasonable presumptions are in favor of the validity of the trial proceedings and judgment thereon, and it is our duty to affirm in the absence of some showing that the trial court erred. Rayner v. Lindsey, 243 Miss. 824, 138 So.2d 902 (1962). Moreover, "[I]f the action of the trial judge can be upheld for any reason, we must affirm." Taylor v. F. & C. Contracting Co., Inc., 362 So.2d 625, 628 (Miss. 1978); Chatham v. Johnson, 195 So.2d 62, 64 (Miss. 1967). In DeFoe v. Great Southern Nat'l Bank, N.A., 547 So.2d 786 (Miss. 1989), we stated:
This Court will generally affirm, even if it finds that the lower court has employed erroneous legal reasoning, provided only that the correct result has been achieved below. Shewbrooks v. A.C. & S., Inc., 529 So.2d 557, 564 (Miss. 1988); Allgood v. Bradford, 473 So.2d 402, 411 (Miss. 1985); Briggs v. Benjamin, 467 So.2d 932, 934 (Miss. 1985); Forman ex rel. District Attorney v. Oberlin, 222 Miss. 42, 48-49, 75 So.2d 56, 58-59 (1954). If this be so, the Court certainly must affirm where there is any ground disclosed by the record upon which the decision could have properly been reached, notwithstanding the lower court did not make explicit its grounds. Winfield v. Winfield, 203 Miss. 391, 394-95, 35 So.2d 443, 444 (1948); Securities Investment Co. of St. Louis v. Williams, 193 So.2d 719, 722 (Miss. 1967).
Id. 547 So.2d at 788-89.
We find, at least until the date Gladys filed her petition, that the chancellor acted within his equitable discretion in refusing to order Neville to pay Gladys any portion of the rent from this property.
It needs first to be noted that it was from this commercial realty that Neville paid his alimony obligations to Gladys and supported himself. Moreover, the sole use *891 to which this realty was put was to house the business owned and operated by Neville, which likewise was used to support Neville and pay his alimony obligations to Gladys. Their son, Ned, was living with Gladys at the time of the divorce and continued through this hearing living with his mother, although working for, and eventually purchasing Neville's business. Had Neville paid, or been directed to pay Gladys an additional sum as rent, this would have done two things: decreased his income and increased hers. This assuredly would have materially affected his alimony obligations to her. It would be inequitable to allow Gladys, after all these years of having collected alimony under the arrangement they made, to assert that she is additionally entitled to rent from this property.
The formation of the corporation, and subsequent sale of the business to Ned did not alter Gladys's obligation to come forward and assert her entitlement to a portion of the rent. Insofar as the formation of the corporation to own the business, initially all corporate shares were owned by Neville, and it remained a one-man dry cleaning business owned and operated by him. It is inconceivable she did not know of the sale of the corporate shares to her son, Ned, who was living with her. It would be inequitable to allow her to retain all alimony and support benefits theretofore paid, and at the same time demand a portion of the rent which, had she received it, would most certainly have been a material factor in determining the amount of alimony and support due unto her. O'Neill v. O'Neill, 551 So.2d 228 (Miss. 1989); Perkins v. Kirby, 308 So.2d 914 (Miss. 1975).
The chancellor was manifestly wrong, however, in his holding that Gladys was somehow forever precluded from asserting a claim for a portion of the rent from the building. As a joint owner of the building, she was legally entitled to one-half of the rent received by Neville.

II. THE CROSS-APPEAL
Either party in this action was entitled to file a petition to partite the realty. Miss. Code Ann. § 11-21-3 (Supp. 1991); Miller v. Miller, 298 So.2d 704 (Miss. 1974). Neville stated sufficient facts in his pleading to survive a motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure (MRCP). It was error, therefore, for the chancellor to dismiss the cross-complaint. It should be further noted, however, that while the cross-complaint states sufficient facts to get Neville in court, it is also subject to a MRCP Rule 12(e) motion to make it more definite. This being an action involving land, we repeat what we recently held in Carpenter v. Haggard, 538 So.2d 776 (Miss. 1989):
While the MRCP have effected greatly needed changes in trial pleadings, we should not ignore the wisdom behind the statute requiring a complainant, in an action involving realty, to deraign title in his pleading. Deraignment of title is an abstract of information from the public land records setting forth all possible parties in interest, precisely how their interest, or claim thereto, arises. Land, unlike parties litigant, survives forever, and it is of paramount importance to the chancery court to have all parties who might be affected by a title decree or judgment made parties to the action. The plaintiff, before the case ever comes to trial, should set forth in writing facts sufficient to sustain his claim of interest. The plaintiff's attorney would be prudent to set forth in his initial complaint a deraignment of title, because the opposing party is entitled to demand it, anyway, Rule 12(e), and in all likelihood the chancellor will want such information before him before he proceeds to trial. It is inconceivable that any attorney would file an action involving title to realty without securing all this information beforehand, in any event. It should present no burden to him to set it forth in pre-trial pleadings at some point.
Id. at 778.
It is clear that this property cannot be partited in kind, and therefore we remand for a hearing on partition by sale, pursuant to Miss. Code Ann. § 11-21-11 (Supp. 1992). The parties are entitled to an equal division of the net proceeds. After *892 deducting all partition costs, Neville should be compensated for all sums he has paid in taxes, maintenance and repairs on the building since October 31, 1989, the date Gladys filed her petition. The chancellor should further consider and determine to what extent Gladys's entitlement to alimony and support would have been reduced had she been paid one-half of the rent beginning November 1, 1989, and this sum should be deducted from her one-half and paid unto Neville, and any further balancing of the equities, if any, between the parties.
After these credits and deductions, the net remaining proceeds of the sale should be divided equally between Neville and Gladys.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
DAN M. LEE, P.J., and SULLIVAN, BANKS and McRAE, JJ., concur.
PRATHER, P.J., concurs in part and dissents in part with separate written opinion joined by PITTMAN, ROBERTS and SMITH, JJ.
PRATHER, Presiding Justice, concurring in part, and dissenting in part
I respectfully dissent from that portion of the majority opinion which holds that Gladys Gates, as title owner to a one-half undivided interest in realty, was precluded from asserting a claim for her share of past rentals received by the co-tenant within the statutory limitation of action period. The divorce decree was silent as to this commercial property in question and did not condition the amount of her alimony payment upon forfeiture or waiver of rent entitlements. If the decree (or her agreement) had addressed this issue, the decree would preclude her right to rent. Stone v. Stone, 385 So.2d 610, 614 (Miss. 1980). But these are not the facts here.
The majority opinion does hold that Gladys is not precluded from asserting a claim for further rent received from the building. If she is entitled to future rentals by virtue of her ownership, as the majority holds, then she should also be entitled to past rental, less her pro rata share of appropriate expenses. I therefore dissent from this holding of the majority.
On all other holdings, I concur.
PITTMAN, ROBERTS and SMITH, JJ., join this opinion.